UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEAN CARLOS RAMIREZ-ORTIZ,<br><br>Defendant. | Case No.: 3:19-cr-00300-BTM<br><br>**MEMORANDUM**<br><br>**[ECF No. 9]** |

**I.     INTRODUCTION**

Juan Carlos Ramirez-Ortiz was charged with violating Title 8, United States Code, Section 1325(a)(2). (ECF No. 1 "Compl."; ECF No. 16). The Government alleged that on January 2, 2019, a Border Patrol Agent intercepted Mr. Ramirez-Ortiz and two other individuals in a remote area of Copper Canyon, located approximately three miles east of the Otay Mesa, California Port of Entry and approximately one mile north of the boundary between the United States and Mexico. (Compl.; ECF No. 12 at 2-3). Mr. Ramirez-Ortiz told the Border Agent he was a citizen of Honduras without permission to be in the United States. (Compl.) Mr. Ramirez-Ortiz was arrested and transported to a Border Patrol

Station to be questioned. (Compl.; ECF No. 12 at 3).

On January 3, 2019, Mr. Ramirez-Ortiz appeared before a magistrate judge with his assigned Federal Public Defender and was charged with "knowingly elud[ing] examination and inspection by Immigration Officers" in violation of 8 U.S.C. § 1325(a)(2). (ECF No. 3). On January 23, 2019, Mr. Ramirez-Ortiz moved the Court to dismiss the Complaint. (ECF No. 9). On January 31, 2019, the Court denied Mr. Ramirez-Ortiz's Motion and proceeded with the bench trial. The Court found Defendant guilty of Count 1 of the Misdemeanor Information. (ECF No. 24). The Court stated that it would place its reasons for the denial of the motions in writing.

## II. DISCUSSION

Defendant moved the Court to dismiss the complaint based on (1) a violation of equal protection and due process; (2) a violation of his statutory right to apply for asylum; (3) violation of international treaty obligations; and, (4) the unconstitutionality of 8 U.S.C. § 1325. Defendant also requested a jury trial, and an order regarding the elements of 8 U.S.C. § 1325(a)(2). (ECF No. 9).

The Court will address each of Defendant's arguments in turn.

### A. Equal Protection

Defendant argues that individuals charged with § 1325 in this district are treated more harshly than other defendants facing equivalent or lesser offenses, violating the Equal Protection Clause of the United States Constitution. (ECF No. 9 at 3-6). The Court disagrees.

Defendant makes the same equal protection arguments that other courts in this district have soundly rejected. *See United States v. Chavez-Diaz*, 18-mj-20098-AJB, ECF No. 29 (S.D. Cal. Oct. 30, 2018); *United States v. Mazariegos-Ramirez*, No. 18-mj-222276-WQH, 2019 WL 338923 (S.D. Cal. Jan. 28, 2019). The fact that all defendants charged under § 1325 are aliens does not by itself render these defendants a suspect class. *See Plyer v. Doe*, 457 U.S. 202, 223

(1982) ("Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.' "); *United States v. Mendoza-Hinojosa*, 216 F.3d 1085 at *2 (9th Cir. 2000) (explaining the "distinction between statutes which classify based on alienage and statutes which classify based on criminal actions" and that "imposing different rules on immigrants versus citizens does not in itself create a suspect classification"). Defendant has introduced no evidence showing that the scheduling or treatment of § 1325 defendants is based on alienage rather than the offense at issue. And even if the distinction were premised on alienage, "rational basis review would apply and satisfy equal protection analysis." *Mazariegos-Ramirez*, 2019 WL 338923 at *2. Misdemeanor § 1325 cases are handled together rather than on the CVB calendar because it makes "organizational sense" given the volume of § 1325 cases and divergent jurisdictional underpinnings of CVB court. *Chavez-Diaz*, 18-mj-20098-AJB, ECF No. 29 at 6; *Mazariegos-Ramirez*, 2019 WL 338923 at *2 . The Court adopts the reasoning of these other courts in this district and rejects Defendant's equal protection argument.

**B. Due Process**

Defendant argues that a separate § 1325 calendar violates substantive and procedural due process under the United States Constitution. The Court rejects both arguments.

To state a substantive due process claim, the conduct must "shock the conscience and offend the community's sense of fair play and decency." *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Security*, 908 F.3d 476, 518 (9th Cir. 2018). "[T]he 'shock the conscience' standard erects a high hurdle for would-be claimants." *Ms. L. v. U.S Immigration & Customs Enf't*, 302 F. Supp. 3d 1149, 1166 (S.D. Cal. 2018). Defendant falls short of the required showing. Defendant offers only the conclusory argument that "it 'shocks the conscience'

for the Government to blatantly deprive § 1325 defendants of the substantial benefits of CVB court while extending those benefits to defendants charged with similar or *more* serious crimes who have similar or *greater* risk of flight." (ECF No. 9 at 7 (emphasis in original)). But the record lacks any evidence of conditions or practices that Ramirez-Ortiz himself experienced that offend notions of human decency, and Defendant does not explain how the process he received—independent hearings and a trial before a district judge—shocks the conscience. *See, e.g.*, *United States v. Mazariegos-Ramirez*, No. 18-mj-22276-WQH, 2019 WL 338923, at *2 (S.D. Cal. Jan. 28, 2019) (holding § 1325 prosecution does not violate Due Process Clause). Defendant's procedural due process argument also fails because Defendant has not identified what constitutionally guaranteed process he was denied as an asylum seeker who violated 8 U.S.C. § 1325(a)(2). The Court concludes that Defendant was not deprived of due process.

### C. Statutory Right to Apply for Asylum

Defendant alleges that the prosecution violates his statutory right to apply for asylum and therefore must be dismissed. (ECF No. 9 at 9). Defendant cites 8 U.S.C. § 1158(a)(1), which provides: "[a]ny alien who is physically present in the United States or who arrives in the United States [ ] whether or not at a designated port of arrival . . . [ ] irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title." Defendant urges the Court to consider that 8 U.S.C. § 1225(b) requires immigration officers to refer an alien for an asylum interview if he or she expresses "an intention to apply for asylum . . . or a fear of persecution," even if the officer determines the alien is otherwise inadmissible. However, Defendant manufactures hypothetical scenarios instead of showing how he was personally deprived of this purported right to apply for asylum. (ECF No. 9 at 9). Moreover, a plain reading of the statutes suggests that they are not in conflict and that


4

3:19-cr-00300-BTM

Congress chose not to grant immunity to asylum seekers who face criminal prosecution under 8 U.S.C. § 1325(a)(2). (ECF No. 12 at 9). The Court concludes that any statutory right to apply for asylum has not been violated.

### D. International Treaties

Defendant argues that his prosecution violates his rights under Article 31(1) of the United Nations Convention Relating to the Status of Refugees ("the Convention"). (ECF No. 9 at 10). Although the United States did not sign the Convention, it acceded to the 1967 Protocol Relating to the Status of Refugees (the "Protocol"). *See Khan v. Holder*, 584 F.3d 773, 783 (9th Cir. 2009). "The Protocol bound parties to comply with the substantive provisions of Articles 2 through 34 of the United Nations Convention Relating to the Status of Refugees." *I.N.S. v. Stevic*, 467 U.S. 407, 416 (1984) (internal citations omitted). Article 31(1) provides:

> The Contracting States shall not impose penalties, on account of their illegal entry or presence, on refugees, who, coming directly from a territory where their life or feedom was threatened in the sense of Article 1, enter or are present in their territory without authorization, provided they present themselves without delay to the authorities and show good cause for their illegal entry or presence.

However, Defendant's reliance on Article 31(1) of the Protocol to challenge his prosecution is misplaced. *See, e.g., United States v. Velasquez-Luna*, No. 18-mj-11463-WQH, 2019 WL 338947 at *2 (S.D. Cal. Jan. 28, 2019) ("Defendant cannot rely on Article 31(1) of the Protocol to challenge his prosecution."). The Protocol is not self-executing and is therefore not domestically enforceable. *Khan*, 584 F.3d at 783; *see also United States v. Malenge*, 294 F.Appx. 642, 644 (2d. Cir. 2008) (holding asylum seeker's criminal prosecution for entering the United States using a false passport and identity was not barred by the Protocol because the Protocol "did not provide [defendant] with any judicially enforceable rights"). Because Defendant has no domestically enforceable rights under the

Protocol, this argument fails. *See Velasquez-Luna*, 2019 WL 338947 at *2; *United States v. Guevara-Medina*, No. 18-mj-9443-BTM, 2018 WL 3970092 (S.D. Cal. Aug. 29, 2018); *United States v. Munoz*, 2017 WL 4922047 at *3 (D. Ariz. Oct. 30, 2017) (holding "[d]efendant acquired no rights under the 1967 Protocol, including its incorporation of Article 31(1) of the United Nations Convention Relating to the Status of Refugees" and "accordingly cannot rely on these international agreements as a basis for dismissing his indictment").

The Court notes that even if the Protocol were enforceable, Defendant has not set forth facts or otherwise argued that he abided by the Protocol's provisions and presented himself "without delay to the authorities." (See ECF No. 9). Under Article 31(1) of the Protocol, "contracting states are free to prosecute when refugees . . . fail to immediately notify authorities that they are seeking asylum and explain their illicit entry." *See United States v. Malenge*, 472 F. Supp. 2d 269, 273 (N.D.N.Y. 2007), aff'd, 294 Fed.Appx. 642 (2d Cir. 2008); *Guevara-Medina*, 2018 WL 3970092 at *2 ("Because Defendant hid in the brush after entry in an attempt to evade authorities, and did not intend to apply for asylum unless he was caught, he has not shown that the protections of Article 31(1) of the Protocol apply to him."); *Munoz*, 2017 WL 4922047, at *4 ("Article 31(1) protects asylum seekers who 'present themselves without delay to the authorities and show good cause for their illegal entry or presence.' Defendant did not do this. He did not appear at a U.S. port of entry and ask for asylum.").

Given the foregoing, international treaties do not bar Defendant's prosecution under 8 U.S.C. § 1325(a)(2).

### E. Constitutionality of 8 U.S.C. § 1325

Defendant argues that 8 U.S.C. § 1325 is unconstitutional because of the Supreme Court's recent holding in *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017). In *Morales-Santana*, the Supreme Court held that a statute conferring derivative citizenship to children of unwed persons drew gender-based

distinctions, violating equal protection in the Fifth Amendment's Due Process Clause. *Id.* at 1700-01. The Court struck the portion of the statute that applied a less onerous physical presence requirement on unwed mothers, and held that the requirements imposed on unwed fathers "should apply, prospectively, to children born to unwed mothers." *Id.* at 1701. Defendant argues that because his § 1325 offense "rests on these invalid statutes," it too is constitutionally invalid, and the complaint must be dismissed. (ECF No. 9 at 13). Defendant is mistaken. *Morales-Santana* does not address the constitutionality of 8 U.S.C. § 1325, and the severability clause of the Immigration and Nationality Act allows for offending provisions to be stricken without affecting or invalidating the whole. *See* 8 U.S.C. § 1101 note ("If any provision of this title . . . is held invalid, the remainder of the title . . . shall not be affected thereby.")

The Court joins other courts in this district and concludes that 8 U.S.C. § 1325 is not unconstitutional. *See, e.g., United States v. Mazariegos-Ramirez*, No. 18-mj-22276-WQH, 2019 WL 338923, at *2 (S.D. Cal. Jan. 28, 2019); *United States v. Valdivia-Munoz*, No. 18-mj-20433-RNB, 2018 WL 5311742, at *2 (S.D. Cal. Oct. 26, 2018).

### F. Jury Trial

Defendant concedes that the six-month limit on his incarceration renders his offense "petty" for Six Amendment purposes, but argues that he is entitled to a jury trial because "the penalty of deportation" combined with "custodial punishment" is "sufficiently severe to warrant a jury trial." (ECF No. 9 at 15). This argument is unavailing.

"It is well established that the Sixth Amendment, like the common law, reserves th[e] jury trial right for prosecutions of serious offenses, and that 'there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision.' " *United States v. Wallen*, 874 F.3d 620, 625 (9th Cir. 2017) (quoting *Lewis v. United States*, 518 U.S. 322, 325 (1996)

(quoting *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968))). "An offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious." *Id.*

The Court notes that 8 U.S.C. § 1325 does not provide for deportation as a consequence of conviction, and deportation does not automatically flow from a § 1325 conviction. Deportation is therefore "not a penalty [the legislature] authorized as a consequence of the conviction." *See United States v. Velasequez-Luna*, 18-mj-11463-WQH, 2019 WL 338947 at *2 (S.D. Cal. Jan. 28, 2019); *United States v. Mazariegos-Ramirez*, 18-mj-222276-WQH, 2019 WL 338923 at *2-3 (S.D. Cal. Jan. 28, 2019). The possibility of deportation cannot "convert [a] border-crossing misdemeanor into a 'serious offense' for which the Sixth Amendment requires a trial by jury." *United States v. Rodriguez-Rodriguez*, 742 F.2d 1194 (9th Cir. 1984). Therefore, the consequences Defendant faces for violating § 1325(a)(2), a petty offense, do not entitle him to a jury trial.

Defendant's citation of *Padilla v. Kentucky*, 559 U.S. 356 (2010) does not persuade the Court otherwise. Although *Padilla* acknowledges that deportation is a "severe penalty" that is "uniquely difficult to classify as either a direct or collateral consequence," the decision is inapposite because it addresses deportation in the context of the Sixth Amendment right to effective assistance of counsel, not the Sixth Amendment right to a jury trial. *See id.* at 365-66. Because Defendant cites no authority mandating a jury trial for aliens who might face deportation after committing a petty offense, Defendant is not entitled to a jury trial.

**G. Elements of § 1325**

In addition to requiring proof of alienage, Defendant asserts that a conviction under 8 U.S.C. § 1325 requires the Government to prove the following beyond a reasonable doubt: (1) that defendant "*purposefully* eluded

8

3:19-cr-00300-BTM

examination"; and, (2) defendant "*successfully* eluded examination, which means that the defendant crossed into the United States *free from official restraint at a port of entry*" or at the very least, "that an immigration officer was present when the defendant entered." (ECF No. 9 at 16) (emphases added).

Defendant mischaracterizes the Government's burden. Defendant was charged with with § 1325(a)(2), which authorizes criminal prosecution of "[a]ny alien who . . . eludes examination or inspection by immigration officers." 8 U.S.C. § 1325(a)(2). Section 1325(a)(2) requires a mens rea of "knowingly"—not "purposefully." *United States v. Yanez-Chavez*, No. 18-mj-20068-BTM, 2018 WL 6445169 (Dec. 10, 2018). The Government need not prove that Defendant's conduct occurred at a port of entry. *See id.* at *5; *United States v. Sanchez-Mendoza*, No. 18-mj-2224-BGS-DMS, 2018 WL 4002094 (S.D. Cal. Aug. 22, 2018); *United States v. Ochoa-Delgado*, No. 18-mj-3457-AJB, 2018 WL 4002712 (S.D. Cal. Aug. 22, 2018); *United States v. Chavez-Castillo*, No. 18-mj-2653-WQH, 2018 WL 3833441 (S.D. Cal. Aug. 13, 2018). Finally, the official restraint doctrine does not apply to prosecutions under § 1325(a)(2). *See, e.g.*, *United States v. Lopez-Bernal*, No. 18-mj-20090-BAS, 2018 WL 5256760, at *3 (S.D. Cal. Oct. 22, 2018); *United States v. Choy-Timana*, No. 18MJ3200 AJB, 2018 WL 4092125, at *4 (S.D. Cal. Aug. 28, 2018) ("A violation of § 1325(a)(2) does not require proof of an entry and does not require proof that Defendant was free from official restraint.") ; *United States v. Flores-Ramos*, No. 18-mj-2665-WQH, 2018 WL 3833488, at *3 (S.D. Cal. Aug. 13, 2018). Although the Ninth Circuit recognizes "entry" as a term of art that requires both physical presence in the United States and freedom from official restraint, subsection (a)(2)—unlike (a)(1) and (a)(3)—does not include the requirement that defendant "enter." *See United States v. Argueta-Rosales*, 819 F.3d 1149, 1158 (9th Cir. 2016); 8 U.S.C. § 1325(a)(1)-(3). In asserting a "freedom from official restraint" requirement, Defendant asks the Court to recognize an element that does not exist. *See*

*Lopez-Bernal*, 2018 WL 5256760 at *3.  The Court declines to do so.

Dated:  February 27, 2019

_____
Honorable Barry Ted Moskowitz
United States District Judge